Dwarika **SINGH**, Plaintiffs,

v.

Howard **PARNES**, et al., Defendants.

No. 01 Civ. 2449.

United States District Court,
S.D. New York.

April 29, 2002.

---

Dwarika Singh, Flushing, NY, plaintiff pro se.

Kenneth P. Horowitz, Goldberg, Weprin & Ustin, L.L.P., New York City, Lawrence T. Schiro, Novick, Edelstein, Lubell, Reisman, Wasserman & Leventhal, Yonkers, NY, Israel Vider, Brooklyn, NY, Preston L. Zarlock, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, Scott David Miller, Michael T. Ryan, Buffalo, NY, for Defendants.

Statement of the Court Regarding
Defendant's Motion to
Dismiss

MARRERO, District Judge.

Plaintiff Dwarika Singh ("Singh") brought this action, *pro se,* against various defendants alleging violations of the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C §§ 1961–68 ("RICO"). The events and transactions that gave rise to Singh's complaint relate to: (1) the purchase and mortgage financing of a property located at 1930 Grand Concourse, Bronx, New York (the "Building") by Mithila Realty, Inc. ("Mithila"), of which Singh claims to be the assignee; (2) a foreclosure and receivership proceeding with respect to the Building in 1996–97; and (3) the subsequent sale of the Building by Mithila in 1997. Defendants comprise of several entities and individuals involved at various times in different aspects of those events and transactions. In responding to Singh's complaint, defendants divided themselves into four groupings, each of which filed a separate motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the purposes of the matter now before it, the Court considers the sufficiency of Singh's claims in accordance with the defendants' groupings. The Court notes that defendants' motions to dismiss, following several extensions to answer in response to Singh's multiple amendments to his complaint, were filed after defendants had interposed their answers. Despite this untimeliness, the Court may construe a Rule 12(b)(6) motion filed after the answer as one made under Rule 12(c) for a judgment on the pleadings, the standard of review for which is identical to that which applies to Rule 12(b)(6) motions. *See Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 124 (2d Cir.2001). The Court elects to so treat defendants' motions in this case. For the reasons indicated, the motions are granted.

## I. *FACTS*

### A. *TRANSACTIONS RELATED TO THE BUILDING*

The first group of defendants consists of persons and entities that allegedly were parties in the purchase and mortgage financing of the Building by Mithila in 1986. Some of these defendants had continuing roles, along with others, in the subsequent foreclosure, receivership and ultimate sale of the Building by Mithila to other defendants. These defendants, here referred to as the "HP Defendants", include: Gates Assets Inc, ("Gates"); Howard L. Parnes

("Parnes"); James G. Houlihan ("Houlihan"); Houlihan Parnes Realtors LLC ("HP Realtors"); Frank T. Chiarello ("Chiarello"), WRA Properties, Inc. ("WRA"); Novick, Edelstein, Lubell, Reisman, Wasserman & Leventhal, P.C. ("Novick"); Patricia A. Friederich ("Friederich"); and Peter M. Rivera ("Rivera").

Singh alleges that he was repeatedly defrauded by the HP Defendants in connection with various transactions regarding the Building, specifically: (1) Mithilas's purchase of the Building from Gates in December 1986 and the related mortgage financing provided by Gates; (2) the later assignment of the mortgage by Gates to Parnes and Chiarello and collection of the mortgage debt and Building rents by them; (3) the foreclosure action filed by Parnes and Chiarello in 1996 in which attorneys Novick and Friederich, in violation of ethical standards, represented Parnes and Chiarello and advanced their fraudulent purposes; (4) the receivership proceeding in which Rivera was appointed a receiver by a state court in 1997 and (5) the sale of the Building by Mithila in 1997 to WRA, an entity controlled by Chiarello, and WRA's subsequent assignment of the mortgage to other defendants.

Singh alleges that Gates was a fictitious entity formed by Parnes and Houlihan in violation of applicable state laws and for the sole purpose of defrauding Mithila in the purchase and mortgaging of the Building. Singh also claims that Parnes and Houlihan conducted their real estate brokerage business as a racketeering enterprise engaged in fraudulent buying and selling of real property, of which their transactions with Mithila regarding the Building was an example. The pattern of fraudulent and racketeering conduct, violating various provisions of state and federal law, that Singh attributes to these defendants includes forming fictitious entities, concealing and misrepresenting material facts, forging documents, charging inflated brokerage fees, mail and wire fraud and collecting money under threat of bringing foreclosure actions.

The second motion is that made by State Supreme Court Justice Douglas E. McKeon ("McKeon"). Singh alleges that in connection with the receivership action, Friederich and Rivera, by means of false and misleading statements, conspired with McKeon and procured McKeon to rule against Singh in denying a motion to vacate the receivership.

The third motion represents that of three defendants involved in Mithila's sale of the Building in 1997. In that transaction, which Singh alleges occurred under duress by Parnes and Chiarello, Mithila conveyed the Building to 1930 Grand Concourse LLC ("1930 Grand Concourse"), which later transferred to David Green ("Green"), who in turn assigned the Building's underlying mortgages to 1056 Boynton Realty ("Boynton"). According to Singh, Boynton was a fictitious entity formed by Parnes and Houlihan as part of their scheme to defraud.

Finally, the fourth motion was filed by HSBC Bank USA, ("HSBC"), successor to Marine Midland Bank. Singh asserts that Boynton fraudulently assigned two mortgages in the Building to HSBC in connection with a $1,300,000.00 financing in March 1998 allegedly carried out in furtherance of the conspiracy with Parnes and Green to defraud.

## B. *PRIOR LITIGATION*

Under the principles enunciated by the Second Circuit in *Cortec Indus. v. Sum Holding,* 949 F.2d 42 (2d Cir.1991), and related cases, the Court, in considering the motions to dismiss, takes note of three prior actions brought by Mithila, Singh and relatives in some form of privity with

Singh, against some of the HP Defendants arising out of the same events and transactions that form the core of the action Singh asserts in this case. Those cases are:

1. *Singh v. Parnes*, New York State Supreme Court, Queens County, Index No. 24180/96 ("*Singh I* ").

Plaintiff in *Singh I* was Bina Singh, wife of Singh and the designated purchaser and signatory of the contract for sale of the Building in 1986. In essence, the complaint in *Singh I*, filed in 1996, alleges that HP Realtors, Parnes, Chiarello and Gates, among others, conspired to defraud Mithila in connection with the sale and mortgage financing of the Building by Gates. The state court, granting defendants' motions for summary judgment in 1999, ruled that (a) Bina Singh had failed to plead with the requisite specificity the nature of the tortious acts defendants committed; (b) Mithila, having been dissolved by the State for failure to pay taxes, lacked legal capacity to sue, and thus was barred from maintaining any action in New York courts; and (c) Singh's fraud claim was barred by the statute of limitations. The same court in March 2001 denied a motion by Dwarika Singh for leave to intervene or substitute himself as plaintiff in that matter, noting that Singh had failed to establish that Mithila was an existing corporation.

2. *Singh v. Parnes*, New York State Supreme Court, Bronx County, Index No. 21529/97 ("*Singh II* ").

This action, naming as defendants, among others Parnes, Chiarello and Rivera, was filed in August 1997 by or on behalf of Singh's children, who alleged that their parents lacked authority to sell the Building and sought to set aside as fraudulent the 1997 conveyance of the Building to 1930 Grand Concourse. Singh filed an affidavit in that action asserting fraud by Parnes, Chiarello and others in connection with their dealings with Mithila related to the Building. The court, in a decision issued by McKeon in January 1998, found that the Singh children's claims failed to state a cause of action in fraud against any of the defendants and denied the relief requested.

3. *Singh v. Parnes*, New York State Supreme Court, Queens County, Index No. 23738/98 ("*Singh III* ").

Singh and Mithila commenced *Singh III* in December 1998 against Parnes, Chiarello, Gates and HP Realtors. The complaint asserted that the 1986 sale and mortgage financing of the Building by Gates to Mithila were fraudulent. In September, 1999 the Court dismissed the action, ruling that: (a) insofar as it was brought on behalf of Mithila, the case could not be maintained because Mithila, by reason of its failure to pay taxes, had no *de facto* existence and could not sue or be sued after it was dissolved; (b) the fraud claims asserted were barred by the preclusive effect of *res judicata* given to the court's ruling in *Singh II* that the fraud claims there alleged were not substantiated. Specifically, the court observed that upon review of the papers submitted in the prior action and the matter before it, "it is apparent that the cause of action arises out of the same transaction, and is based on the same series of facts . . ."; (c) Singh's arguments that his action was not barred by *res judicata*, that he and Mithila were not parties in *Singh II* and that the relief requested in the two actions was different, were considered and rejected, the court finding instead that in fact Singh was sufficiently in privity to the original suit and that the matters he asserted in the subsequent action could have been argued in the earlier litigation; (d) Singh and Mithila failed to state a cause of action for fraud.

This Court also takes note of two other cases, *Singh v. HSBC,* No. 02 Civ. 1348, and *Singh v. HSBC,* No. 02 Civ. 2681, filed in this Court by Singh and his children respectively against HSBC and its attorneys in the case at bar. The core of both actions is that HSBC and counsel, in papers filed in this Court in defense of the instant matter, made statements that Singh and his children allege are false and defamatory, causing Singh and his children mental and economic injury.

## II. *DISCUSSION*

### A. *HP DEFENDANTS' MOTION*

Considering the HP Defendants's motion first, the Court finds several grounds upon which Singh's complaint is insufficient to state a claim upon which relief may be granted.

### 1. *Rules of Preclusion*

■ First, the Court concludes that Singh is barred by the doctrine of *res judicata* from maintaining this action insofar as it rests on claims of fraud arising out of Mithila's purchase, financing, foreclosure and subsequent sale of the Building. These claims were asserted by Singh and parties in privity with him in three prior state court proceedings and were there determined to be unsubstantiated.

■ Under federal doctrine, a federal court must accord to a final judgment rendered in a state court the same preclusive effect that would be given to the judgment under the law of the state in which it was rendered. *See Migra v. Warren City School Dist. Bd. of Ed.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Collateral estoppel bars relitigation of any issue which is identical to one necessarily decided in a prior action and in which the parties were af-forded a full and fair opportunity to litigate. *See Polur v. Raffe,* 912 F.2d 52, 55 (2d Cir.1990).

■ New York law precludes relitigation of claims that arise from the same factual groupings describing the wrong upon which the action is grounded, even if denoted as separately stated claims but related to different legal theories of recovery. *See Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 429 N.E.2d 746, 749 (1981). According to the New York Court of Appeals, what factual "grouping" constitutes a transaction or series of transactions depends on how "the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (quoting *Matter of Reilly v. Reid,* 45 N.Y.2d 24, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978)).

■ Consistent with these principles, the Second Circuit has stated that it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies. *See Saud v. Bank of New York,* 929 F.2d 916, 919 (2d Cir.1991) (quoting *Expert Elec. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)). The Circuit Court also noted that new legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata. See id.* (quoting *In re Teltronics Servs., Inc.,* 762 F.2d 185, 193 (2d Cir.1985)). Accordingly, Second Circuit doctrine holds that judgments rendered in prior suits may be given preclusive effect in a subsequent action between the same parties or their privies asserting a RICO claim that could have been but was not expressly asserted in the earlier litigation. *See Saud,* 929

F.2d at 919. The considerations the court found controlling in determining the preclusive scope of the prior judgment were whether: (1) the same transaction or connected series of transactions is at issue; (2) the same evidence is needed to support both claims; and (3) the facts essential to the second were present in the first. *See id.* (quoting *NLRB v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983)). Under these principles, a party cannot avoid the preclusive effect of *res judicata* or collateral estoppel by recasting allegations of fraud adjudicated in the prior litigation as a federal RICO action. *See Saud,* 929 F.2d at 920; *Polur,* 912 F.2d at 56.

Here, in *Singh II* the state court determined that Singh and his privies had failed to state a cause of action in fraud against any of the defendants sued. In *Singh III,* the complaint recited the entire history of what Singh characterized as "a continuous fraud" by Parnes, Chiarello, Gates and HP Realtors commencing from the initial sale of the Building to Mithila in 1986 to its sale in 1998 to 1930 Grand Concourse. In reviewing the *Singh II* decision, the court in *Singh III* specifically noted that the claims of fraud were not substantiated and that a comparison of the papers submitted in the two actions revealed that both causes of action arose out of the same transaction and were based on the same series of facts. Thus the court held that Singh's subsequent action was barred by the earlier judgment in *Singh II.* The court also held that Singh could not argue that he was not in privity with the plaintiffs in the *Singh II.* Finally, the court also reiterated the holding of *Singh II* that Singh had failed to state a cause of action in fraud against any of the defendants.

A review of the allegations set forth in Singh's complaint in the case at hand reveals that the facts essential to support Singh's RICO claims, specifically the alleged fraudulent conduct by Parnes, Houlihan, Chiarello, Gates and Rivera in connection with the various events and transactions related to the Building constituted the very heart of the fraud claims arising from the same transactions or series of transactions and supported by the same evidence as those asserted in the three earlier state court proceedings.

On the foregoing basis, this court is obligated to accord to the prior state judgments the same preclusive effect they would be given under state law. That the state court in *Singh III* had already ruled that under New York law *res judicata* applied to bar relitigation of Singh's fraud claims compels a finding by this Court that Singh may not seek to relitigate those claims here by recasting them under the label of a federal RICO action. *See Saud,* 929 F.2d at 919–20; *Polur,* 912 F.2d at 56.

Even if Singh personally was not a party to all of the earlier state proceedings, the *Singh III* court held that he was in privity with plaintiffs in the prior action and thus barred by *res judicata* from relitigating. That determination, too, is embodied in the state court's judgment and entitled to preclusion from relitigation in this Court. In any event, in applying the principles that determine the existence of sufficient privity, the Court finds that those considerations are satisfied here. *See Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir.1995), Singh had familial relationships with the plaintiffs in the earlier suits. He was himself a plaintiff, along with Mithila, in *Sinqh III.* He participated directly and substantially assisted in prosecuting the other actions and moved to substitute himself as plaintiff in *Singh I.*

██ HP Defendants Novick, Friederich, and WRA were not named parties in the three prior state court actions. As to

the involvement of these defendants in the underlying events, Singh merely enlarges the scope and details of the same transactions related to the Building and suggests some form of conspirational role by these parties in the alleged fraudulent activities managed by Parnes, Houlihan, Chiarello and HP Realtors. Any claim against these defendants grounded on the issues of fraud Singh and Mithila litigated in the three state court actions would be barred by the doctrine of collateral estoppel, which does not require a litigant invoking the principle to have been a party in the prior action or have any degree of privity with those parties.

In fact, the issues of alleged fraud in the acquisition, mortgaging and foreclosure of the Building upon which Singh's RICO and related fraud claims against these defendants are grounded were actually presented in the prior proceedings, and Singh had a full and fair opportunity to litigate those claims in the three separate actions instituted by him or his privies. In an affidavit Singh submitted in support of his children's claim in *Singh II*, he made reference to alleged fraudulent conduct involving removal of papers from the court, and that "no one else could do it except the attorney of the alleged mortgagee or they themselves. They have a net work [sic] in the court too." (Affidavit of Kenneth P. Horowitz, dated September 28, 2001, Ex. E ("Horowitz Aff."), ¶ 22.) In his complaint in *Singh III*, Singh asserts that Parnes "through his agent and receiver collected and defrauded" rent payments during the receivership of the Building. (Horowitz Aff., Ex. G ¶ 30.) These allegations encompass the crux of the participation by Novick, Friederich, Rivera and McKeon in the fraudulent and racketeering activities Singh asserts as the basis for his RICO claims in the instant action against these defendants.

Based on the preceding considerations, the Court grants the HP Defendants' motion to dismiss as precluded by the doctrines of *res judicata* and collateral estoppel.

## 2. RICO

Separately, the Court finds that Singh's complaint must be dismissed on the ground that the pleadings do not assert facts that sufficiently establish the essential elements of a RICO action under 28 U.S.C. § 1962. To state a private claim for damages under RICO, a plaintiff must satisfy two burdens. First, he must establish that the defendant has violated the substantive RICO statute, that is, the criminal provisions of the statute. To satisfy this test, the defendant must allege the existence of seven requisite elements identified by the Second Circuit in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Those factors are:

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce ...

The Circuit Court elaborated that a plaintiff must allege adequately defendant's violation of § 1962 before turning to the second burden—i.e., invoking RICO's civil remedies of treble damages, attorneys fees and costs. With regard to this latter burden, a plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." *Id.*

More specifically, §§ 1962(a)–(d) prohibit particular acts committed from or through a pattern of racketeering activity: (1) the use of income so derived to acquire

an interest in, or the establishment or operation of an enterprise engaged in or whose activities affect interstate commerce; (2) the acquisition of an interest in or control of such an enterprise; (3) the conduct or participation in the conduct of such an enterprise's affairs, and (4) conspiring to do any of the above. *See* 18 U.S.C. § 1962(a)–(d).

Singh does not specify in his complaint the particular substantive provisions of RICO he alleges the various defendants violated. Nonetheless, the Court finds the pleadings here are deficient to state a claim under any of the provisions of § 1962.

Each subsection of § 1962 shares two factors as required elements to establish a claim for damages: that the wrongful conduct the defendant allegedly engaged in occurred (1) through "a pattern of racketeering activity", (2) conducted by an "enterprise". In this case, Singh's RICO action cannot be sustained under any of the four subsections because, at the outset, his pleadings fail to demonstrate that the injuries he claims having suffered derived from defendants' acts that sufficiently establish the RICO statute's definition of a "pattern of racketeering activity" or of an "enterprise".

■ To satisfy the "pattern of racketeering" requirement a RICO claimant "must plead at least two predicate acts, show that the acts are related and that they amount to, or pose a threat of, continuing criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). As so defined, a sufficient "pattern" must meet several criteria. First, the plaintiff must show the occurrence of at least two predicate acts of "racketeering". Second, the specific instances of qualifying criminal conduct must have taken place within ten years of each other.

*See* 18 U.S.C. § 1961(5). Third, the alleged acts must be related and amount to a threat of continuing specified unlawful conduct. *See H.J. Inc.*, 492 U.S. at 238–44, 109 S.Ct. 2893.

■ Thus, separate, discreet acts which are unrelated would not suffice. *See H.J. Inc.*, 492 U.S. at 241–50, 109 S.Ct. 2893; *United States v. Indelicato*, 865 F.2d 1370, 1376–1, 1384 (2d Cir.) (*en banc*), *cert. denied*, 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989). Rather, the continuity standard must be met by factual assertions demonstrating either a "closed-ended" pattern of past criminal activities occurring over and extended period of time, or an "open-ended" pattern of such past activities combined with a threat of continuation into the future. *See H.J. Inc.*, 492 U.S. at 241–42, 109 S.Ct. 2893; *United States v. Alkins*, 925 F.2d 541, 551 (2d Cir.1991).

■ Even a lenient reading of Singh's pleadings—prolix and disjointed though they are—in the light most favorable to the complainant, demonstrates no factual assertions satisfying the "pattern of racketeering" requirement as to any of the HP Defendants. Whatever pattern and continuity of allegedly unlawful conduct Singh specifies relates to the defendants' conduct in connection with the events and transactions pertaining to a single property: Mithila's acquisition, mortgage financing, debt collection, foreclosure, receivership and ultimate sale of the Building.

Beyond the injuries Singh asserts having suffered as sole victim of these alleged unlawful activities, there is no indication in the complaint that the conduct at issue constitutes a threat of continuing criminal activity. Rather, the claimed racketeering activities begin and end with Mithila's purchase and sale of the Building, and every violation of law and alleged RICO predicate act that Singh describes arises

uniquely out of Mithila's series of transactions and relationships with defendants pertaining to this single property. Moreover, apart from the discrete events surrounding the acquisition of the Building in 1986 and those pertaining to its foreclosure, receivership and sale in 1996–97—though these transactions are meticulously described in their minutest details—Singh asserts nothing that establishes a pattern of alleged racketeering acts demonstrating closed-ended continuity sufficient to satisfy this element of a viable RICO claim.

■ Singh perhaps endeavors to address these deficiencies by means of generalized assertions that defendants' *"transaction with Mithila Realty is one sample and example out of many of their racketeering business which will reveal their fraudulent and racketeering practices."* (Compl. ¶ 39.) (emphasis in original.) Such diffuse, speculative and conclusory pleadings, however, are unavailing here. First, general allegations are insufficient to satisfy the particularity required to plead a RICO action grounded on fraudulent acts. *See Plount v. American Home Assurance Co., Inc.,* 668 F.Supp. 204, 206 (S.D.N.Y. 1987). Second, the Court's holding above that Singh's instant action is barred by the rules of preclusion to the extent it is grounded on allegations of fraud, pose insurmountable obstacles to establishing a RICO case predicated on assertions of fraud that have already been adversely adjudicated and dismissed in Singh's prior state court actions.

■ Singh's pleadings also fail to demonstrate facts sufficient to satisfy the "enterprise" element common to all subsections of § 1962. The allegations of the complaint do not sufficiently establish that Singh's asserted injuries derived from defendants' direct or indirect investment in, or maintaining an interest or control over, or participating in the operation or management of the affairs of a qualifying "enterprise." *See Moss,* 719 F.2d at 17; *see also Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993); *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990); *Discon Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1062 (2d Cir.1996), *vacated on other grounds,* 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). As enunciated by the Supreme Court, the existence of a RICO enterprise is established by evidence of "an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The Supreme Court has also held that a RICO plaintiff must prove the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply referred to by a different name." *Cedric Kushner Promotions Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001).

Singh suggests that the RICO enterprise he asserts consisted of HP Realtors. (Compl. ¶ 21, 39.) However, other than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the "enterprise" and the "person" who conducted the affairs of the enterprise through a pattern of racketeering. *See id.; see also Bennett v. U.S. Trust,* 770 F.2d 308, 315 (2d Cir.1985); *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 344 (2d Cir.1994). Nor do Singh's pleadings indicate sufficient evidence of an "enterprise's hierarchy, organization and activities", or that the alleged members functioned as an integrated unit. *United States v. Coonan,* 938 F.2d 1553, 1560–61 (2d Cir.1991), *cert. denied,* 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628

(1992); *Goldfine v. Sichenzia,* 118 F.Supp.2d 392, 401 (S.D.N.Y.2000).

Here, as stated above, rather than indicating that the HP Defendants functioned as a continuing unit that conducted and furthered the affairs of an "enterprise", Singh's pleadings describe a series of discrete transactions occurring first in 1986 and later 1996–97 and having in common only a single property and Singh's interest in it. There is no indication that in carrying out the activities Singh alleges, the defendants were carrying out the affairs of an unlawful enterprise as defined by the statute, rather than their own affairs or those of their institutional employers, principals or partners. *See Reves,* 507 U.S. at 185, 113 S.Ct. 1163.

Accordingly, for the reasons discussed above, the Court finds Singh's pleadings insufficient to state a RICO claim and grants the HP Defendants' motion to dismiss the complaint.

## B. *HSBC MOTION*

The Court next turns to the motion of HSBC, which is asserted on essentially the same grounds advanced by the HP Defendants: the preclusive effect of the judgments rendered in the three prior state court proceedings, and the insufficiency of the pleadings to state a RICO claim.

With regard to HSBC, the complaint describes HSBC's involvement in the injuries Singh alleges to comprise of the bank's participation in a loan it made to one of the other defendants in 1998, after Mithila had sold he Building, and the alleged fraud committed by the other defendants in procuring that loan.

These allegations are insufficient as against HSBC for the same reasons described in the preceding analysis pertaining to the HP Defendants. First, to the extent Singh's claims against HSBC rest on assertions of fraud arising from the events and transactions related to acquisition, financing, mortgage debt, foreclosure, receivership and sale of the Building during Mithila's ownership, and Mithila's relationships with relevant defendants, the Court concludes that such claims are barred by the principle of collateral estoppel because the underlying issues were decided against Singh or his privies in the prior state court actions.

Second, Singh fails to state a sufficient RICO claim against HSBC for the same reasons set forth in the preceding analysis as it pertains to the HP Defendants. One issue specific to HSBC bears comment. The complaint makes reference to the existence of an "HSBC Enterprise" (Comp. ¶ 97) without clarity as to whether it is intended to be distinct from the "Houlihan Enterprise" Singh asserts was the principal entity through which the defendants engaged in RICO activities. Nonetheless, Singh's claims against HSBC fail to satisfy the "enterprise" element under either theory. Insofar as Singh asserts the existence of a separate HSBC "enterprise", he cannot satisfy the pertinent requirement of § 1962 because the complaint does not sufficiently distinguish between the alleged RICO "person" and the RICO "enterprise", *See Cedric Kushner,* 533 U.S. at 161–64, 121 S.Ct. 2087; *Anatian,* 193 F.3d at 89; *Bennett,* 770 F.2d at 315.

In addition, the complaint does not allege facts sufficient to demonstrate HSBC's participation in the operation or management of the Houlihan enterprise Singh asserts caused him the injuries he claims. *See Reves,* 507 U.S. at 179, 113 S.Ct. 1163.

The Court also finds that, with regard to HSBC, Singh has not otherwise established that the activities the complaint describes constituted a sufficient "pattern of racketeering", nor that the injuries Singh

asserts resulted from HSBC's investment in, maintenance or control of, or participation in a racketeering enterprise or conspiracy to commit any of these acts. Accordingly, the Court grants HSBC's motion to dismiss the complaint.

## C. GREEN, BOYNTON AND 1930 GRAND CONCOURSE MOTION

The third motion to dismiss before the Court is made on behalf of three defendants: Green, Boynton and 1930 Grand Concourse. According to the complaint, Green signed the purchase contract for the 1997 transaction through which Mithila sold the Building. Green then assigned the contract to 1930 Grand Concourse as the corporate purchaser. Boynton held a mortgage or mortgages it had acquired from an entity controlled by Chiarello. Boynton later assigned the mortgage to HSBC in connection with the 1998 financing already described. Singh claims that these transactions represented a continuation of the scheme of the HP Defendants to defraud him, and that Green, Boynton and 1930 Grand Concourse were part of the fraudulent and racketeering acts and of the conspiracy Singh alleges. (Compl. ¶¶ 85; 96–98; 147–53.)

The Green, Boynton and 1930 Grand Concourse motion to dismiss rests on the same grounds and those of the HP Defendants and HSBC, and essentially assert the reasons for dismissal advanced by the other defendants. The court finds the allegations of the complaint as against Green, Boynton and 1930 Grand Concourse insufficient to sustain this action on the same basis set forth in the Court's analysis with regard to the HP Defendants and HSBC. Accordingly the Court grants the motion to dismiss filed by defendants Green, Boynton and 1930 Grand Concourse.

## D. THE McKEON MOTION

The fourth motion to dismiss before the Court is that filed by McKeon. Singh alleges that McKeon's rulings in the foreclosure action pertaining to the Building in 1996 and 1997, were issued through improper practices also involving Friederich and Rivera, and formed part of the fraud, racketeering acts and conspiracy that caused the injuries he claims. McKeon argues that Singh's claims against him must be dismissed on various grounds: that (1) Singh's claim for damages against McKeon for actions taken in his official capacity constitutes a suit against the State of New York and that such action is barred by the Eleventh Amendment to the United States Constitution; (2) this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine to consider the claim against McKeon to the extent Singh appears to be challenging state court orders in this case (Comp. ¶¶ 109, 126–27, 131–33); and (3) the claim for damages against McKeon is barred by absolute judicial immunity.

█ The Court concurs that Singh's claim for damages against McKeon are barred the doctrine of absolute judicial immunity and in light of this determination declines to consider the other grounds McKeon asserts. *See Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *see also Polur*, 912 F.2d at 56 (affirming dismissal of conspiracy claims against state judges on the ground of their protection by judicial immunity). Singh's claims against McKeon arise from the decisions and orders he issued in 1996 and 1997 in connection with foreclosure a proceeding instituted concerning the Building. These rulings manifestly constitute official judicial acts for which McKeon is immune from claims

for money damages. *See Polur*, 912 F.2d at 56.

 As enunciated by the Supreme Court, the judicial immunity doctrine holds that action against a judge may not be sustained where a plaintiff fails to demonstrate that the judge acted "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Polur*, 912 F.2d at 56. Here, there is nothing in the pleadings, beyond Singh's conclusory assertions, to indicate sufficiently that McKeon acted in the clear absence of all jurisdiction and authority to rule upon the matters at issue in the foreclosure proceedings regarding the Building. Moreover, the rulings on which Singh's claims against McKeon are based fall within the scope of judicial acts protected by the immunity doctrine. Even if alleged to have been rendered in bad faith or malice, or if later declared improper, judicial acts do not lose their immunity. *See Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286; *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir.1990). Accordingly, the Court grants McKeon's motion to dismiss the complaint.

### E. *OTHER CLAIMS*

Although the complaint here appears to assert only RICO claims, it could be read to suggest other claims based on common law theories, for example, fraud and unjust enrichment, as well as violations of various state statutes. The Court's dismissal of the RICO claims in their entirety leaves no federal law grounds to support the Court's exercise of jurisdiction over any remaining matters. As there appears to be no diversity of citizenship between the parties, the Court lacks subject matter jurisdiction to entertain any remaining state law claims.

 Finally, the Court concludes that leave to re-plead is unwarranted under the circumstances presented in this case. Although leave to replead "shall be freely given when justice so requires" under Federal Rule of Civil Procedure 15(a), such leave is not required if there are defects in a plaintiff's complaint that are incurable. *See Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 516 (S.D.N.Y.1997); *see also Cortec Indus.*, 949 F.2d at 47–48 ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice") (per curiam). In the instant case, given the preclusive effect of the prior state court judgments, there are simply no additional facts that would support Singh's claims for relief on any claims grounded on fraud. Accordingly there is no theory under which the defendants could be held liable for the injuries Singh asserts arising from the events and transactions at issue.

### F. *SANCTIONS*

As a final matter, some of the defendants, citing Singh's numerous other actions brought against them in both state courts and in this Court arising from the same events and transactions pertaining to the Building, have urged this court to impose sanctions against Singh under Federal Rule of Civil Procedure 11 or in exercise of the Court's inherent power to protect parties from vexatious litigation. *See Polur*, 912 F.2d at 57; *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983); *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984).

The Court concludes that six lawsuits filed by Singh or his privies against substantially the same defendants grounded on claims that essentially derive from the same core events, four of which have been decided against him, give rise to substantial questions as to Singh's good faith in prosecuting these actions. These circum-

stances also provide grounds for legitimate concern about the vexation and expense to which such repetitive litigation has subjected the defendants, and about the strain on judicial resources that abuse of the legal system always imposes.

■ For these reasons the Court is persuaded that appropriate injunctive relief here is warranted. Accordingly, the Court will, in its order dismissing the instant case, enjoin Singh from filing, without leave of this Court, further suits in the federal courts of New York against the defendants named in this action arising out of or relating to the events and transactions involving the purchase, financing, foreclosure, receivership or sale of the Building by Singh, Mithila and any other parties in privity with them, or out of the instant litigation before this Court. *See Polur*, 912 F.2d at 57.

### ORDER

The numerous defendants in this action, represented by counsel in four groupings, have each filed a motion to dismiss the complaint filed by plaintiff Dwarika Singh ("Singh"): (1) defendant HSBC Bank USA filed its motion on July 2, 2001; (2) defendant Justice Douglas McKeon filed his motion on September 10, 2001; (3) defendants Howard L. Parnes, James G. Houlihan, Houlihan Parnes LLC, Frank T. Chiarello, WRA Properties Inc., Gates Assets Inc., Novick, Lubel, et al., Patricia A. Friederich, and Peter M. Rivera filed their motion on October 4, 2001; and (4) defendants 1930 Grand Concourse, David Green, and 1056 Boynton Realty filed their motion on October 17, 2001. On April 26, 2002, the Court heard oral argument on the matter. For the reasons set forth in the statement made by the Court on the record at the April 26, 2002 Hearing, a copy of which is attached hereto and incorporated herein, the Court grants defendants'

motion. In addition, for the reasons set forth on the record, the Court concludes that Singh has had a full and fair opportunity to litigate the claims presented in this case and that the five other related actions filed by Singh or his privies against substantially the same defendants grounded on claims that essentially derive from the same core events raise serious questions as to Singh's good faith in prosecuting these actions. Accordingly, it is hereby

**ORDERED** that defendants' motions to dismiss the complaint filed by Dwarika Singh are GRANTED; and it is further

**ORDERED** that Singh is hereby enjoined from filing, without leave of this Court, further actions in federal courts in New York against any defendant named in this action arising out of or relating to the events and transactions involving the purchase, financing, foreclosure, receivership or sale of the property located at 1930 Grand Concourse, Bronx, New York by Singh, Mithila Realty, Inc., and any other parties in privity with them, or out of the instant litigation before this Court.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**