533 U.S. 158
121 S.Ct. 2087
150 L.Ed.2d 198
 NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.
CEDRIC KUSHNER PROMOTIONS, LTD., PETITIONER
v.
DON KING et al.
SUPREME COURT OF THE UNITED STATES
 No. 00-549.
 Argued April 18, 2001
Decided June 11, 2001
 
 Syllabus
 Petitioner, a corporate promoter of boxing matches, sued Don King, the president and sole shareholder of a rival corporation, alleging that King had conducted his corporation's affairs in violation of the Racketeer Influenced and Corrupt Organizations Act, which makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. 1962(c). The District Court, citing Circuit precedent, dismissed the complaint. In affirming, the Second Circuit expressed its view that 1962(c) applies only where a plaintiff shows the existence of two separate entities, a "person" and a distinct "enterprise," the affairs of which that "person" improperly conducts. In this instance, the court noted, it was undisputed that King was an employee of his corporation and also acting within the scope of his authority. Under the court's analysis, King, in a legal sense, was part of the corporation, not a "person," distinct from the "enterprise," who allegedly improperly conducted the "enterprise's affairs."
 Held: In the circumstances of this case, 1962(c) requires no more than the formal legal distinction between "person" and "enterprise" (namely, incorporation); hence, the provision applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner-whether he conducts those affairs within the scope, or beyond the scope, of corporate authority. This Court does not quarrel with the basic principle that to establish liability under 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. Nonetheless, the Court disagrees with the appellate court's application of that "distinctness" principle to the present circumstances, in which a corporate employee, acting within the scope of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. The Court can find nothing in RICO that requires more "separateness" than that. Linguistically speaking, an employee who conducts his corporation's affairs through illegal acts comes within 1962(c)'s terms forbidding any "person" unlawfully to conduct an "enterprise," particularly when RICO explicitly defines "person" to include "any individual ... capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation," 1961(3), (4). And, linguistically speaking, the employee and the corporation are different "persons," even where the employee is the corporation's sole owner. Incorporation's basic purpose is to create a legal entity distinct from those natural individuals who created the corporation, who own it, or whom it employs. See, e.g., United States v. Bestfoods, 524 U.S. 51, 61-62. The precedent on which the Second Circuit relied involved significantly different circumstances from those here at issue. Further, to apply RICO in these circumstances is consistent with the statute's basic purposes of protecting both a legitimate "enterprise" from those who would use unlawful acts to victimize it, United States v. Turkette, 452 U.S. 576, 591, and the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which unlawful activity is committed, National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259. Conversely, the appellate court's critical legal distinction-between employees acting within and without the scope of corporate authority-would immunize from RICO liability many of those at whom this Court has said RICO directly aims, e.g., high-ranking individuals in an illegitimate criminal enterprise, who, seeking to further the enterprise's purposes, act within the scope of their authority, cf. Turkette, supra, at 581. Finally, nothing in the statute's history significantly favors an alternative interpretation. This Court's rule is no less consistent than is the lower court's rule with the following principles cited by King: (1) the principle that a corporation acts only through its directors, officers, and agents; (2) the principle that a corporation should not be liable for its employees' criminal acts where Congress so intends; and (3) antitrust law's intracorporate conspiracy doctrine. Pp. 2-8.
 219 F.3d 115, reversed and remanded.
 ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Breyer, J., delivered the opinion for a unanimous Court.
 Opinion of the Court
 Justice Breyer delivered the opinion of the Court.
 
 
 1
 The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961 et seq., makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs" through the commission of two or more statutorily defined crimes-which RICO calls "a pattern of racketeering activity." 1962(c). The language suggests, and lower courts have held, that this provision fore- sees two separate entities, a "person" and a distinct "enterprise."
 
 
 2
 This case focuses upon a person who is the president and sole shareholder of a closely held corporation. The plaintiff claims that the president has conducted the corporation's affairs through the forbidden "pattern," though for present purposes it is conceded that, in doing so, he acted within the scope of his authority as the corporation's employee. In these circumstances, are there two entities, a "person" and a separate "enterprise"? Assuming, as we must given the posture of this case, that the allegations in the complaint are true, we conclude that the "person" and "enterprise" here are distinct and that the RICO provision applies.
 
 
 3
 Petitioner, Cedric Kushner Promotions, Ltd., is a corporation that promotes boxing matches. Petitioner sued Don King, the president and sole shareholder of Don King Productions, a corporation, claiming that King had conducted the boxing-related affairs of Don King Productions in part through a RICO "pattern," i.e., through the alleged commission of at least two instances of fraud and other RICO predicate crimes. The District Court, citing Court of Appeals precedent, dismissed the complaint. Civ. No. 98-6859, 1999 WL 771366, *3-4 (SDNY, Sept. 28, 1999). And the Court of Appeals affirmed that dismissal. 219 F.3d 115 (CA2 2000) (per curiam). In the appellate court's view, 1962(c) applies only where a plaintiff shows the existence of two separate entities, a "person" and a distinct "enterprise," the affairs of which that "person" improperly conducts. Id., at 116. In this instance, "it is undisputed that King was an employee" of the corporation Don King Productions and also "acting within the scope of his authority." Id., at 117. Under the Court of Appeals' analysis, King, in a legal sense, was part of, not separate from, the corporation. There was no "person," distinct from the "enterprise," who improperly conducted the "enterprise's affairs." And thus 1962(c) did not apply. Ibid.
 
 
 4
 Other Circuits, applying 1962(c) in roughly similar circumstances, have reached a contrary conclusion. See, e.g., Brannon v. Boatmen's First Nat. Bank of Okla., 153 F.3d 1144, 1148, n. 4 (CA10 1998); Richmond v. Nationwide Cassel L. P., 52 F.3d 640, 647 (CA7 1995); Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 265, 269 (CA3 1995); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1534 (CA9 1992). We granted certiorari to resolve the conflict. We now agree with these Circuits and hold that the Second Circuit's interpretation of 1962(c) is erroneous.
 
 
 5
 We do not quarrel with the basic principle that to establish liability under 1962(c) one must allege and prove the existence of two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name. The statute's language, read as ordinary English, suggests that principle. The Act says that it applies to "person[s]" who are "employed by or associated with" the "enterprise." 1962(c). In ordinary English one speaks of employing, being employed by, or associating with others, not oneself. See Webster's Third New International Dictionary 132 (1993) (defining "associate"); id., at 743 (defining "employ"). In addition, the Act's purposes are consistent with that principle. Whether the Act seeks to prevent a person from victimizing, say, a small business, S. Rep. No. 91-617, p. 77 (1969), or to prevent a person from using a corporation for criminal purposes, National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994), the person and the victim, or the person and the tool, are different entities, not the same.
 
 
 6
 The Acting Solicitor General reads 1962(c) "to require some distinctness between the RICO defendant and the RICO enterprise." Brief for United States as Amicus Curiae 11. And she says that this requirement is "legally sound and workable." Ibid. We agree with her assessment, particularly in light of the fact that 12 Courts of Appeals have interpreted the statute as embodying some such distinctness requirement without creating discernible mischief in the administration of RICO. See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 445 (CA5 2000); United States v. Goldin Industries, Inc., 219 F.3d 1268, 1270 (CA11) (en banc), cert. denied, 531 U.S. 1102 (2000); Begala v. PNC Bank, 214 F.3d 776, 781 (CA6 2000), cert. denied, 531 U.S. __ (2001); Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (CA1 1996); Richmond, supra, at 646-647; Gasoline Sales, Inc. v. Aero Oil Co., 39 F.3d 70, 72-73 (CA3 1994); Confederate Memorial Assn., Inc. v. Hines, 995 F.2d 295, 299-300 (CADC 1993); Board of Cty. Comm'rs, San Juan Cty. v. Liberty Group, 965 F.2d 879, 885 (CA10), cert. denied, 506 U.S. 918 (1992); River City Markets, Inc. v. Fleming Foods West, Inc., 960 F.2d 1458, 1461 (CA9 1992); Busby v. Crown Supply, Inc., 896 F.2d 833, 840 (CA4 1990); Atlas Pile Driving Co. v. DiCon Financial Co., 886 F.2d 986, 995 (CA8 1989); Bennett v. United States Trust Co. of New York, 770 F.2d 308, 315, and n. 2 (CA2 1985), cert. denied, 474 U.S. 1058 (1986); see also Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd., 204 F.3d 1368, 1383, n. 7 (CA Fed. 2000) (approving of distinctness requirement in dicta), cert. denied, 531 U.S. __ (2001). Indeed, this Court previously has said that liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).
 
 
 7
 While accepting the "distinctness" principle, we nonetheless disagree with the appellate court's application of that principle to the present circumstances-circumstances in which a corporate employee, "acting within the scope of his authority," 219 F.3d, at 117, allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more "separateness" than that. Cf. McCullough v. Suter, 757 F.2d 142, 144 (CA7 1985) (finding either formal or practical separateness sufficient to be distinct under 1962(c)).
 
 
 8
 Linguistically speaking, an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual ... capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation." 18 U.S.C. 1961(3), (4). And, linguistically speaking, the employee and the corporation are different "persons," even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs. See United States v. Bestfoods, 524 U.S. 51, 61-62 (1998); Burnet v. Clark, 287 U.S. 410, 415 (1932); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations 7, 14 (rev. ed. 1999).
 
 
 9
 We note that the Second Circuit relied on earlier Circuit precedent for its decision. But that precedent involved quite different circumstances which are not presented here. This case concerns a claim that a corporate employee is the "person" and the corporation is the "enterprise." It is natural to speak of a corporate employee as a "person employed by" the corporation. 1962(c). The earlier Second Circuit precedent concerned a claim that a corporation was the "person" and the corporation, together with all its employees and agents, were the "enterprise." See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N. A., 30 F.3d 339, 344 (1994) (affirming dismissal of complaint). It is less natural to speak of a corporation as "employed by" or "associated with" this latter oddly constructed entity. And the Second Circuit's other precedent also involved significantly different allegations compared with the instant case. See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (1999) (affirming dismissal where plaintiff alleged that same bank was both "person" and "enterprise"), cert. denied, 528 U.S. 1188 (2000); Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (1996) (involving complaint alleging that corporate subsidiaries were "persons" and subsidiaries, taken together as parent, were "enterprise"), vacated on other grounds, 525 U.S. 128 (1998); Bennett, supra, at 315, and n. 2 (same as Anatian). We do not here consider the merits of these cases, and note only their distinction from the instant case.
 
 
 10
 Further, to apply the RICO statute in present circumstances is consistent with the statute's basic purposes as this Court has defined them. The Court has held that RICO both protects a legitimate "enterprise" from those who would use unlawful acts to victimize it, United States v. Turkette, 452 U.S. 576, 591 (1981), and also protects the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which "unlawful ... activity is committed," National Organization for Women, Inc., 510 U.S., at 259. A corporate employee who conducts the corporation's affairs through an unlawful RICO "pattern . . . of activity," 1962(c), uses that corporation as a "vehicle" whether he is, or is not, its sole owner.
 
 
 11
 Conversely, the appellate court's critical legal distinction-between employees acting within the scope of corporate authority and those acting outside that authority-is inconsistent with a basic statutory purpose. Cf. Reves, supra, at 184 (stating that an enterprise is " 'operated,' " within 1962(c)'s meaning, "not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management" (emphasis added)). It would immunize from RICO liability many of those at whom this Court has said RICO directly aims-e.g., high-ranking individuals in an illegitimate criminal enterprise, who, seeking to further the purposes of that enterprise, act within the scope of their authority. Cf. Turkette, supra, at 581 (Congress "did nothing to indicate that an enterprise consisting of a group of individuals was not covered by RICO if the purpose of the enterprise was exclusively criminal").
 
 
 12
 Finally, we have found nothing in the statute's history that significantly favors an alternative interpretation. That history not only refers frequently to the importance of undermining organized crime's influence upon legitimate businesses but also refers to the need to protect the public from those who would run "organization[s] in a manner detrimental to the public interest." S. Rep. No. 91-617, at 82. This latter purpose, as we have said, invites the legal principle we endorse, namely, that in present circumstances the statute requires no more than the formal legal distinction between "person" and "enterprise" (namely, incorporation) that is present here.
 
 
 13
 In reply, King argues that the lower court's rule is consistent with (1) the principle that a corporation acts only through its directors, officers, and agents, 1 Fletcher, supra, 30, (2) the principle that a corporation should not be liable for the criminal acts of its employees where Congress so intends, Brief for Respondents 20-21, and (3) the Sherman Act principle limiting liability under 15 U.S.C. 1 by excluding "from unlawful combinations or conspiracies the activities of a single firm," Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769-770, n. 15 (1984). The alternative that we endorse, however, is no less consistent with these principles. It does not deny that a corporation acts through its employees; it says only that the corporation and its employees are not legally identical. It does not assert that ordinary respondeat superior principles make a corporation legally liable under RICO for the criminal acts of its employees; that is a matter of congressional intent not before us. See, e.g., Gasoline Sales, Inc., 39 F.3d, at 73 (holding that corporation cannot be "vicariously liable" for 1962(c) violations committed by its vice president). Neither is it inconsistent with antitrust law's intracorporate conspiracy doctrine; that doctrine turns on specific antitrust objectives. See Copperweld Corp., supra, at 770-771. Rather, we hold simply that the need for two distinct entities is satisfied; hence, the RICO provision before us applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner-whether he conducts those affairs within the scope, or beyond the scope, of corporate authority.
 
 
 14
 For these reasons, the Court of Appeals' judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 15
 It is so ordered.