**TIERNEY AND PARTNERS, INC.,**

v.

**Steven ROCKMAN, et al.**

**Civil Action No. 03–1826.**

United States District Court,
E.D. Pennsylvania.

Aug. 5, 2003.

---

Joseph H. Blum, Thomas H. McDonough, Frey, Petrakis, Deeb, Blum, Briggs & Mitts, P.C. Philadelphia, PA, for Plaintiff.

Joel P. Trigiani, F. Emmett Fitzpatrick, Elizabeth S. Gallard, Eckert Seamans Cherin & Mellott, LLC, Thomas Herman Kohn, Markowitz & Richman, Philadelphia, PA, for Defendants.

## MEMORANDUM

BAYLSON, District Judge.

Tierney and Partners, Inc. (herein "Plaintiff") has filed a Complaint asserting violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961–68, against all Defendants. Plaintiff also alleges various state law causes of action. Presently before this Court is a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), by Defendants Martin Kuper and DotCom Enterprises ("DotCom"). Separately, Defendants Steven Rockman and Nanosoft have filed a Motion for a RICO Case Statement, pursuant to Rule 12(e). For the reasons which follow, both pending motions will be granted, and Plaintiff's Complaint will be dismissed, without prejudice, with leave to file an amended complaint, which shall be accompanied by a RICO Case Statement.

## I. Legal Standards

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court must accept as true all well pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *See Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *See Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).[1]

## II. Allegations of the Complaint

Plaintiff alleges the following facts, which, for the purpose of deciding the instant motion, will be read in the light most favorable to Plaintiff. According to the Complaint, Plaintiff is a full-service, strategic communications agency with numerous divisions, including Advertising, Public Relations, Direct Response, Interactive, Public Affairs, Media, and Research. Complaint ¶ 15.

In December 1998, Plaintiff hired Defendant Rockman as the Senior Vice President of Plaintiff's Interactive Division. *Id.* ¶ 16. Plaintiff alleges that Rockman, at all times relevant, "utilized" an entity operating under the trade name Nanosoft. *Id.* ¶ 8. The Complaint does not specify the nature of Nanosoft's business, or the means by which Rockman "utilized" it.

In February 2000, Plaintiff hired Defendant Foster as a Vice President and Marketing Director. *Id.* ¶ 17. Plaintiff alleges

---

1. Because this Court will grant the Motion to Dismiss under Rule 12(b)(6), filed by Defendants Kuper and DotCom, it is unnecessary to specifically consider the standard for granting a motion under Rule 12(e), for a more definite statement, which is the nature of the motion filed by Defendants Rockman and Nanosoft.

that, at all times relevant, Foster owned Defendant JMG Consulting Group, a Pennsylvania corporation. *Id.* ¶ 7. The Complaint fails to explain whether Foster was the sole owner of JMG, whether he controlled its operations, or even what line of business JMG was in.

As officers of Plaintiff, Rockman and Foster selected third party independent contractors to meet personnel needs within Plaintiff's Interactive Division. *Id.* ¶¶ 23–25. Rockman set the billing rates that the independent contractors would charge to Plaintiff. *Id.* ¶ 26. Plaintiff alleges that Rockman instructed the third party contractors to contact Defendant DotCom Enterprises, to establish a procedure by which the contractors would submit invoices to Plaintiff through DotCom. Under this procedure, the contractors would forward, directly to DotCom, their invoices for work performed on Plaintiff's behalf. *Id.* The Complaint is not at all clear as to the nature of DotCom's business, or its business relationship with Plaintiff. According to Plaintiff, Defendant Kuper, who is Rockman's former father in-law, was the Chief Executive Officer, Treasurer, Secretary, and Director of DotCom.[2] *Id.* ¶¶ 4, 6.

Plaintiff asserts that DotCom and its CEO, Kuper, generated DotCom invoices and faxed them to Plaintiff. Complaint ¶ 27. The Complaint then states that "the amount that DotCom invoiced to [Plaintiff] Tierney is 10–33 % more than the amount actually billed by the third party independent contractors for the work they performed on behalf of Tierney's clients." *Id.* ¶ 28. Plaintiff includes in its pleading a bare list of invoices, setting forth each invoice date, invoice amount, the amount of DotCom's payment to the respective contractor, and the "profit" taken by DotCom for overcharging Plaintiff. *Id.* ¶ 28. Ac-

cording to Plaintiff, upon receipt of payment of the invoices by Plaintiff, DotCom paid the third party subcontractors the amount they invoiced to DotCom, and retained the 10–33 % mark-up as profit. *Id.* ¶ 29. Plaintiff then asserts that Rockman, Foster, and Kuper apportioned DotCom's 10–33 % mark-up, or a total of $120,912, amongst themselves. *Id.* ¶ 30.

The Complaint goes on to allege that Rockman prepared wholly false work invoices, for work that neither he nor anyone else ever performed, and faxed those invoices to DotCom for payment by Plaintiff. After Plaintiff made payment on these false invoices to DotCom, DotCom paid Rockman's company, Defendant Nanosoft, at least $213,500, or approximately 91 % of the total amount invoiced to Plaintiff. *Id.* ¶ 31.

Plaintiff contends that Foster, likewise, prepared fabricated invoices, and faxed them to DotCom for payment by Plaintiff. DotCom then faxed Foster's invoices to Plaintiff, and upon receipt of payment thereon, paid Foster's company, Defendant JMG, at least $57,000, or approximately 73% of the total amount invoiced to Plaintiff. *Id.* ¶ 32.

Moreover, the Complaint claims that Rockman and Foster used a second company, MT Resources, LLC ("MTR"), so as to further conceal their scheme of submitting fraudulent invoices to Plaintiff for their personal enrichment. Complaint ¶ 42. The Complaint lists various invoices allegedly submitted by Rockman and Foster to Plaintiff, through MTR. However, as with DotCom, the Complaint lacks any detail whatsoever as to the nature of MTR's business, or its business relationship with Plaintiff. The Complaint states only that MTR is a Delaware limited liabil-

---

**2.** The Complaint states that DotCom Enterprises is the trade name of an entity known as

I–Alpha Omega, Inc. *Id.* ¶¶ 4, 6.

ity company, which "upon information and belief, is associated with Defendants Rockman and Foster." *Id.* ¶ 9.

Related to its RICO conspiracy count, Plaintiff alleges that

> Rockman, Foster, Kuper, DotCom, JMG, Nanosoft, and MTR conspired among themselves and with others unknown to Tierney to devise, intend to devise, and participate in—and did devise, intend to devise, and participate in—a scheme and artifice to defraud and to steal, and for obtaining property and money by means of false and fraudulent pretenses, misrepresentations, and theft, and to conceal the thefts by false and fraudulent pretenses, misrepresentations, and false declarations, all as described [above].

*Id.* ¶ 45. Plaintiff alleges, without providing any details, that, as part of the Defendants' scheme, Kuper, the CEO of DotCom, "would transmit by interstate wire false and/or fraudulent invoices to Tierney for payment by Tierney." *Id.* ¶ 49.

In March 2002, Plaintiff commenced a formal investigation to determine the nature of the relationship between Rockman, Foster, Kuper, DotCom, Nanosoft, JMG, and MTR. Thereafter, Foster disclosed the fraudulent scheme to Plaintiff. *Id.* ¶¶ 51–53. On March 26, 2002, Plaintiff terminated Rockman and Foster's employment. Prior to that day, Rockman and Foster never acknowledged to Plaintiff that they were associated with DotCom. *Id.* ¶¶ 40–41.

The Complaint finally claims that Rockman, at all times relevant, owned an entity called Courtside 6, another Defendant in this litigation. Plaintiff claims that, on February 10, 2000, while employed by Plaintiff, Rockman prepared and submitted to Plaintiff a false invoice for $2,500, in the name of Courtside 6, whereas Courtside 6 actually performed no compensable work for Plaintiff. At Rockman's direction, Plaintiff paid $2,500 to Courtside 6. Rockman never disclosed to Plaintiff that he owned Courtside 6. *Id.* ¶¶ 54–57.

## III. Discussion

In Counts IV and V of its Complaint, Plaintiff asserts violations of RICO against all Defendants. The RICO statute provides, in relevant part:

> (b) It shall be unlawful for any person *through a pattern of racketeering activity* or through collection of an unlawful debt to *acquire or maintain*, directly or indirectly, any interest in or *control of any enterprise* which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person *employed by or associated with any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, *to conduct or participate*, directly or indirectly, in the conduct of such enterprise's affairs *through a pattern of racketeering activity* or collection of unlawful debt.

> (d) It shall be unlawful for any person *to conspire* to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962 (emphasis added). To successfully plead a civil RICO violation under any of these three subsections, a plaintiff must allege either "a pattern of racketeering activity" or the "collection of an unlawful debt." *See H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 154, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) ("The heart of any RICO complaint is the allegation of a pattern of racketeering.").

Racketeering activity encompasses a wide variety of prohibited conduct, including acts of mail fraud, wire fraud,

bribery, counterfeiting, extortion, and financial institution fraud, as defined in the federal criminal statutes. 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering activity," i.e. two acts of mail or wire fraud, within ten years. 18 U.S.C. § 1961(5). However, "while two acts are necessary, they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 n. 14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Supreme Court, noting that a pattern cannot be formed by "sporadic activity," has established a two-prong framework for considering the existence of a pattern. *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893. Proof of a pattern requires both "a relationship" among the predicate acts, and a showing that the acts "amount to or pose a threat of continued criminal activity." *Id.*

This Court has, on several recent occasions, addressed the sufficiency of a civil RICO complaint. *Healthguard of Lancaster, Inc. v. Gartenberg*, No. Civ.A. 02–2611, 2002 WL 32107627, at *2 (E.D.Pa. Dec. 6, 2002); *Bonovitacola Electric Contractor, Inc. v. Boro Developers, Inc.*, No. Civ.A. 01–5508, 2002 WL 31388806, at *2–3 (E.D.Pa. Oct. 23, 2002); *Gintowt v. TL Ventures*, No. Civ.A. 02–746, 2002 WL 31190853, at *4–5 (E.D.Pa. Oct. 3, 2002). In all three cases, the Court dismissed the plaintiff's civil RICO complaint, without prejudice, permitting the plaintiff to submit an amended pleading, accompanied by a detailed RICO case statement. In *Healthguard*, the Court explained:

> In the instant case, Plaintiff vaguely refers to acts of mail fraud and wire fraud, but it fails to specify these alleged acts, or to explain how each of these alleged acts furthered the scheme to defraud or was incident to an essential part of that scheme. Also ... the Complaint does not contain sufficient allegations as to enterprise, relatedness, or continuity.

The Court believes that RICO requires specifics in these charging paragraphs. *Healthguard*, 2002 WL 32107627, at *2.

■ In the present case, Plaintiff, Tierney and Partners, Inc., fails to identify any particular acts of mail or wire fraud, or any other conduct by Defendants, which would constitute predicate acts of racketeering activity. Moreover, to properly allege civil RICO violations, a plaintiff must not only precisely identify certain predicate acts committed by Defendants, but must also clearly explain how those separate acts, taken together, constitute a pattern of racketeering activity. *See, supra, H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893. Plaintiff has not fulfilled these requirements.

Although Plaintiff's Complaint contains several lists of invoices, alleged to be fraudulent, these bare lists fail to provide details regarding the transmission of the invoices, via mail or wire. Such details are necessary to properly allege predicate acts under RICO. Also, although Plaintiff claims that, on February 10, 2000, Rockman prepared and submitted to Plaintiff a false invoice for $2,500, in the name of Courtside 6, Plaintiff fails to explain how this isolated transmission furthered the Defendants' overall fraudulent scheme. Likewise, while the Complaint alleges that Kuper, the CEO of DotCom, "would transmit by interstate wire false and/or fraudulent invoices to Tierney for payment by Tierney," Complaint ¶ 49, Plaintiff never identifies any specific instances of wire fraud, or other conduct alleged to constitute racketeering activity. Nor does Plaintiff specify which Defendant committed each particular alleged racketeering act.

If Plaintiff alleges that the faxing of fraudulent invoices by various Defendants, on various occasions, amounts to a pattern of racketeering activity, Plaintiff must

identify each separate predicate act, of which Plaintiff has knowledge, indicating the date, the particular person or entity who sent the facsimile in question, the recipient, and, most importantly, the way in which the particular transmission furthered the pattern of racketeering activity and the overall fraudulent scheme. *See Gintowt*, 2002 WL 31190853, at *4–5 (dismissing RICO complaint without prejudice because the plaintiff had provided insufficient detail regarding alleged predicate acts of mail and wire fraud).

In addition, while Plaintiff alleges that DotCom is an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), Complaint ¶ 85, Plaintiff does not set forth sufficient facts to show that DotCom was an enterprise distinct and separate from the other Defendants. *See, e.g., Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); *Jaguar Cars, Inc. v. Royal Oaks Motor Car Company*, 46 F.3d 258 (3d Cir.1995). Rather, Plaintiff only vaguely suggests that, Rockman and Foster, because of their relationship with DotCom's CEO, Kuper, were somehow able to use DotCom in furtherance of their scheme to defraud Plaintiff.

Accordingly, Plaintiff has failed to properly state a civil RICO claim, and both of Plaintiff's RICO counts must be dismissed, without prejudice. Moreover, because Plaintiff does not allege jurisdiction based on diversity of citizenship, Plaintiff's state law causes of action must be dismissed as well, without prejudice.

## IV. Leave to Amend

Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Grant of leave to amend is within the discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Prejudice

to the non-moving party "is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (*quoting Cornell & Co. v. Occupational Safety & Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)). In the absence of substantial prejudice, "denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id.*

None of these reasons for denial are presented in the instant case. Plaintiff's Complaint describes a scheme to defraud that would satisfy the normal federal pleading standards. The Court grants leave to amend because it would be unfair to dismiss the Complaint with prejudice only because Plaintiff has not satisfied the peculiar pleading requirements of RICO. Accordingly, Plaintiff shall have twenty days from the date of this Order, within which to file an amended complaint.

## V. RICO Case Statement

The Amended Complaint should include or be accompanied by a "RICO Case Statement" which this Court will consider as part of the amended pleading. *See, e.g., Glessner v. Kenny*, 952 F.2d 702, 712 n. 9 (3d Cir.1991) ("Courts may consider the RICO case statements in assessing whether plaintiffs' RICO claims should be dismissed."), *overruled on other grounds by Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 260 (3d Cir.1995); *Heintz Corp. v. Electro Methods*, No. Civ.A. 94–6916, 1995 WL 405721, at *1 (E.D.Pa. June 15, 1995) (accepting facts drawn from Complaint and RICO Case Statement as true in considering motion to dismiss); *Greek Radio Network of America, Inc. v. Vlasopoulos*, 731 F.Supp. 1227, 1234 n. 12 (E.D.Pa.1990) (referring to Complaint and RICO Case Statement col-

lectively as "the Complaint"); *Chovanes v. Thoroughbred Racing Assoc.*, No. Civ.A. 99–185, 2001 WL 43780 (E.D.Pa. Jan. 18, 2001).

The RICO Case Statement to be filed should include the following, in substance:

a. As to each Defendant in each RICO Count, state the alleged misconduct and basis of liability of each Defendant.

b. As to the racketeering activity alleged under each RICO Count, include the following:

  i. List each predicate act which Plaintiff alleges constitutes the RICO violation, including such specifics as names, dates and types of communications or acts.

  ii. Describe how each predicate act is fraudulent and/or part of a pattern of racketeering activity.

  iii. State how the alleged predicate acts relate to each other as part of a common plan.

c. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

  i. The names of the individuals, partnerships, corporations, associations or other legal entities that allegedly constitute the enterprise;

  ii. The structure, purpose, function and course of conduct of the enterprise;

  iii. Whether any defendants are employees, officers or directors of the alleged enterprise;

  iv. Whether any defendants are associated with the enterprise; and,

  v. Whether Plaintiff alleges that the defendants are individuals or entities separate from the alleged enterprise, that the defendants are the enterprise itself, or members of the enterprise.

d. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.

e. Describe how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

f. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

g. Describe the effect of the enterprise on interstate or foreign commerce.

h. If the complaint alleges a violation of U.S.C. § 1962(a):

  i. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and,

  ii. Describe the use or investment of such income.

i. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe the acquisition or maintenance of any interest of control of the alleged enterprise.

j. If the complaint alleges a violation of 18 U.S.C. § 1962(c), state:

  i. Who is employed by or associated with the enterprise; and,

  ii. Whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c).

k. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe the alleged conspiracy.

l. Describe the alleged injury to business or property.

m. Provide any additional information that Plaintiff believes would be helpful in processing its RICO claim.

## ORDER

AND NOW, this day of August, 2003, it is hereby ORDERED that:

1. The Motion for a RICO Case Statement, filed by Defendants Rockman and Nanosoft, is GRANTED;

2. The Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Kuper and DotCom Enterprises, is GRANTED;

3. Plaintiff's Complaint is dismissed, without prejudice, with leave to file an amended complaint, accompanied by a RICO Case Statement as described in the foregoing Memorandum, within twenty days of the date of this Order; and

4. All Defendants shall answer, or otherwise respond to Plaintiff's amended complaint, within twenty days after service of that amended complaint.