NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


A&A ELECTRIC SERVICES, INC., a )
Florida corporation, )
                          )
        Appellant/Cross-Appellee, )
                          )
v. )      Case No. 2D14-905
                          )
JAIME JURADO, )
                          )
        Appellee/Cross-Appellant. )
_____ )

Opinion filed August 26, 2015.

Appeal from the Circuit Court for
Hillsborough County; Herbert J. Baumann,
Jr., Judge.

Brett D. Divers of Mills Paskert Divers,
Tampa; and Luis Martinez-Monfort and
Moein Marashi of Gardner Brewer Martinez-
Monfort, P.A., Tampa, for Appellant/Cross-
Appellee.

Laura H. Howard of Addison & Howard,
P.A., Tampa, for Appellee/Cross-Appellant.


VILLANTI, Chief Judge.

        A&A Electric Services, Inc., appeals the final judgment entered against it

and in favor of Jaime Jurado in this action arising out of an alleged joint venture

agreement. Jurado cross-appeals certain aspects of the final judgment. Because

Jurado failed to introduce competent, substantial evidence to prove that a joint venture existed between himself and A&A Electric, we reverse and remand for entry of final judgment in favor of A&A Electric. This decision renders moot the remainder of the arguments raised in both the appeal and cross-appeal.

The facts leading up to the dispute at hand are not directly relevant to the issues presented but are necessary to an understanding of the relationships between the parties and how the dispute between them arose. Jurado has been in the electrical contracting business since 1967. After some time working as an employee of Electric Machinery Enterprises, Inc. (EME), he eventually became its principal owner. In that capacity, he became friends with Angel DeLaParte, who was the sole owner of A&A Electric. Angel's son Andrew DeLaParte (DeLaParte) later took over as sole owner and principal of A&A Electric.

In 2001, EME became embroiled in a dispute over certain work it performed in Orlando, and this dispute led EME to incur serious financial problems.[1] Ultimately, in 2003, EME declared bankruptcy. Because of the bankruptcy, EME lost its ability to obtain the performance bonds necessary to engage in large commercial construction projects. In an effort to keep EME in business, all of its stockholders, including Jurado, sold their stock to Earth First Technologies, Inc. (EFTI), with the expectation that EFTI would obtain the necessary bonds on behalf of EME to allow EME to return to performing large commercial jobs. The practical result of the sale, however, was that EME became a wholly owned subsidiary of EFTI, Jurado no longer had any

---

[1]The work leading to EME's bankruptcy is completely unrelated to any of the contracts at issue in this case.

ownership interest in or direct control over EME, and EME's ability to bid on jobs hinged on the cooperation of EFTI.

However, contrary to Jurado's expectations, EFTI did not always cooperate in getting the necessary bonds for EME to bid on jobs after the change in ownership. Consequently, in an effort to continue to secure larger jobs for EME, Jurado approached DeLaParte to see whether A&A Electric would be willing to assist EME in obtaining bonds for jobs. A&A Electric agreed, and between 2004 and early 2006, A&A Electric and EME worked together on several jobs, with A&A Electric securing the necessary bonds and entering into the contracts in its name, but with EME actually preparing the bids and performing the work. Under this informal working agreement, A&A Electric retained a portion of the job payments in exchange for its services in obtaining the bonds, and the remainder of the funds were paid to EME.

In mid-2006, a general contractor for which EME had previously performed work approached Jurado and told him that the City of Cape Coral was soliciting bids for the electrical work for two water treatment plants. The general contractor suggested that EME bid on the project. Jurado knew that EME could not successfully bid on the projects on its own because of its inability to obtain the necessary bonds. In addition, the work apparently was required to be performed by union electricians, and EME was not unionized. So Jurado approached A&A Electric, which was unionized, about bidding on the jobs. EME employees and A&A Electric employees jointly prepared the bid documents and submitted them to the general contractor. A&A Electric was subsequently awarded the contracts for both jobs. All of the contract documents list A&A Electric as the sole electrical contractor, and the

performance bonds are solely in A&A Electric's name and are guaranteed only by DeLaParte individually. A&A Electric subsequently paid EME $193,488 for the expenses EME had incurred in the bidding process.

In January 2007, A&A Electric began work on the Cape Coral projects. A&A Electric hired several EME employees to oversee the projects, and it placed those employees on its own payroll. EME initially assisted A&A Electric with getting various materials to the job site. However, EME itself never performed any actual work on the Cape Coral jobs, it never had any legal or financial interest in the jobs, and it could not legally have performed any of the work at either of the job sites. A&A Electric subsequently paid EME for its assistance in getting the job started.

At approximately the same time that work at the Cape Coral projects was getting underway, Jurado sent a letter to DeLaParte, the complete text of which was: "This is to acknowledge receipt of $200,000.00 from Jaime Jurado for his 49% share of the Cape Coral Jobs." The letter was not on EME letterhead but rather was on the personal letterhead of Jurado and his wife. Jurado did not address the letter to A&A Electric, nor did he send it to A&A Electric's corporate office. Instead, Jurado addressed the letter to DeLaParte individually, and he mailed it to DeLaParte's home address. Jurado signed the letter personally, and DeLaParte signed his name under the word "Accepted." Nothing in the document indicates that DeLaParte signed the letter as an officer, director, or owner of A&A Electric, and DeLaParte did not include his title or any reference to A&A Electric anywhere in the letter. Nevertheless, according to Jurado, this one-line letter created a joint venture agreement between Jurado individually and

A&A Electric concerning the Cape Coral projects that entitled Jurado personally to 49% of the profits that A&A Electric made on the Cape Coral projects.

There is no dispute that Jurado gave DeLaParte $200,000 at around the time the January 29, 2007, letter was signed. There is also no dispute that these funds were deposited into DeLaParte's personal bank account. In addition, there is no dispute that A&A Electric subsequently paid Jurado $200,000 as a "loan repayment." However, when Jurado demanded that A&A Electric pay him 49% of the profits from the Cape Coral jobs, A&A Electric refused. Jurado then sued A&A Electric, claiming that the January 29, 2007, letter between Jurado and DeLaParte constituted a valid joint venture agreement between Jurado and A&A Electric such that A&A Electric owed Jurado 49% of the profits from the Cape Coral jobs.

The bench trial on Jurado's claims is not a model of clarity. The parties spent an inordinate amount of time introducing evidence relating to the past practices between EME and A&A Electric on jobs in which A&A Electric provided the bond while EME performed the actual work contracted for. According to Jurado, this past practice "explained" the formation of the joint venture on the Cape Coral projects, despite the fact that EME did not—and in fact could not—perform any of the work on the Cape Coral projects. Jurado testified that he sent the January 29, 2007, letter to DeLaParte because he did not want EME to lose the opportunity to do the work; however, it was undisputed that Jurado did not tell EFTI about the Cape Coral jobs and, even if he had, EME could not have performed the work under any circumstances. Further, Jurado could not explain how he, as an employee of EME's parent company, had the right to take over any opportunity EME might have had to participate in the work. Jurado also

admitted that the January 29, 2007, letter did not reference A&A Electric in any manner. Nevertheless, he testified that he and DeLaParte intended the letter to create a joint venture between Jurado and A&A Electric for the work on the Cape Coral projects.

In contrast, DeLaParte testified that the January 29, 2007, letter was part of a series of agreements between himself personally and Jurado personally that were intended to result in DeLaParte taking over the management—and perhaps later the ownership—of EME so as to allow EME to become an independent entity once again. DeLaParte denied signing the letter in his capacity as the owner and president of A&A Electric, and he denied intending to create any joint venture between Jurado and A&A Electric by his signature. Other than Jurado's self-serving testimony as to his opinion of DeLaParte's intent, Jurado introduced no evidence to establish that any joint venture existed between Jurado individually and A&A Electric relating to the Cape Coral projects.

At the close of the bench trial, A&A Electric argued that Jurado had failed to prove that he was engaged in a joint venture with A&A Electric. Nevertheless, the trial court found that a joint venture existed between Jurado and A&A Electric based on the "facts and circumstances surrounding the A&A and EME business relationship between Jurado and A&A." The court made no finding concerning how Jurado would be entitled to take over a corporate opportunity that belonged to EME, and it also made no finding that DeLaParte intended to bind A&A Electric when he signed the January 29, 2007, letter. Nevertheless, the court concluded that A&A Electric owed Jurado money for his share of the joint venture between Jurado and A&A Electric. After

- 6 -

further proceedings during which the court determined the amount of Jurado's share, the court awarded judgment in favor of Jurado, which A&A Electric now appeals.

A joint venture is created when two or more persons combine their property and/or their time to conduct a particular line of trade or business deal. See Kislak v. Kreedian, 95 So. 2d 510, 515 (Fla. 1957). Whether two or more persons have created a joint venture between themselves depends on their intent, "which is to be determined in accordance with the ordinary rules governing the interpretation of contracts." Willis v. Fowler, 136 So. 358, 365 (Fla. 1931). In addition to carrying the burden to prove that a joint venture agreement or contract exists between the parties, the party alleging the existence of a joint venture must also prove that there is "(1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits[,] and (5) a duty to share in any losses." Kislak, 95 So. 2d at 515.

Here, Jurado's claim that he entered into a joint venture with A&A Electric fails in at least three ways. First, Jurado offered no competent evidence that he entered into any contract or agreement of any kind with A&A Electric rather than with DeLaParte individually. "The general rule is that corporations are legal entities separate and distinct from the persons comprising them." Am. States Ins. Co. v. Kelley, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984); see also Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); Corp. Express Office Prods., Inc., v. Phillips, 847 So. 2d 406, 411 (Fla. 2003) (same).

- 7 -

In this case, the evidence at the bench trial established that DeLaParte was the majority shareholder and president of A&A Electric; however, he is nevertheless a distinct legal entity from A&A Electric. Therefore, his actions could be binding on A&A Electric only if he was properly acting on behalf of the corporation when entering into the purported agreement. Actions taken in his personal capacity were not legally binding on A&A Electric, nor could they impose any liabilities on A&A Electric. See Hughes v. Jemco, Inc., 201 So. 2d 565, 567 (Fla. 1st DCA 1967) (noting that if the corporate president was acting individually rather than on behalf of the corporation, then his actions would not be binding on the corporation). While Jurado offered his own self-serving testimony that DeLaParte signed the agreement on behalf of A&A Electric, nothing about the January 29, 2007, letter supports this testimony. Jurado does not dispute that the letter was sent to DeLaParte's residence—not the corporate address of A&A Electric. The letter is not addressed to DeLaParte as president of A&A Electric, and it does not indicate that it was signed by him in that capacity. Moreover, DeLaParte himself testified that he did not sign the letter in his capacity as the owner of A&A Electric. Jurado's insistence that DeLaParte was acting on behalf of A&A Electric when he signed the January 29, 2007, letter is unsupported by any record evidence. Hence, while the January 29, 2007, letter might arguably memorialize a joint venture between Jurado individually and DeLaParte individually, that joint venture agreement would not be enforceable against A&A Electric, which was clearly not a party to it.

In this appeal, Jurado argues that his testimony concerning DeLaParte's intent in signing the letter created a question of fact to be resolved by the trial court and that this court should not revisit that factual finding. And we recognize that the trial

- 8 -

court, as the finder of fact, had the authority to resolve factual disputes and that we do not have the authority to revisit the trial court's resolution of factual disputes. See, e.g., In re Estate of Sterile, 902 So. 2d 915, 922 (Fla. 2d DCA 2005) (noting that in a nonjury case, it is the trial court's function "to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor and credibility of the witnesses" (quoting Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976))); Sinclair v. Sinclair, 804 So. 2d 589, 592 (Fla. 2d DCA 2002) (holding that in a nonjury case, it is not for this court to reweigh the evidence or substitute its judgment for that of the trial court). But this general precept of deference to the finder of fact is limited by the rules of evidence, and this court need not defer to factual findings that are not based on competent evidence.

Assuming for the sake of argument that evidence that DeLaParte intended to bind A&A Electric would have been sufficient to justify a conclusion that A&A Electric was bound to any joint venture agreement, Jurado's argument nonetheless fails because it is based on the false premise that his testimony constituted competent evidence of DeLaParte's intent. It does not. In general, a witness is limited to testifying to facts that are within the witness's knowledge rather than the witness's speculation and conjecture. See, e.g., Kennard v. State, 28 So. 858, 859 (Fla. 1900); Roseman v. Town Square Ass'n, 810 So. 2d 516, 521 (Fla. 4th DCA 2001); see also § 90.604, Fla. Stat. (2012) (providing that a witness may testify only to facts within the witness's personal knowledge). Here, while Jurado might have been competent to testify as to DeLaParte's actions or to statements DeLaParte made about signing the January 29, 2007, letter, Jurado simply was not competent to testify to DeLaParte's actual intent in signing the January 29, 2007, letter. Thus, his testimony on this issue cannot constitute

legally competent evidence of DeLaParte's intent sufficient to create a fact question, and, as a result, there was no factual dispute on this issue for the trial court to resolve. Hence, we conclude that, as a matter of law, Jurado presented legally insufficient evidence to prove that he had entered into any joint venture for which A&A Electric could be held responsible, and the trial court erred in concluding otherwise.

Second, even if there was some basis upon which to find that A&A Electric was a party to the alleged joint venture agreement, the final judgment must be reversed because Jurado presented no competent, substantial evidence that he had "joint control or right of control" over the Cape Coral projects. Jurado presented no evidence that he had the authority to bind A&A Electric in any of its work on the Cape Coral projects. Likewise, Jurado presented no evidence that A&A Electric had any authority to bind him or EME to perform, undertake, or finance any of the work on the Cape Coral projects. In fact, the evidence affirmatively established that neither Jurado nor EME were legally able to perform any work at the Cape Coral projects. Hence Jurado's assertion that he had joint control over the Cape Coral projects but simply chose not to exercise it is wholly unsupported by any of the evidence at trial.

Third, Jurado failed to prove that he had any duty to share in any losses sustained by the alleged joint venture. The only party bound to perform any services under the Cape Coral project contracts was A&A Electric. In addition, only A&A Electric and DeLaParte were obligated on the performance bonds. Like Jurado's assertion that he would have asserted control had he needed to, his bald assertion that he would have shared in the losses had there been any is unsupported by any evidence. Certainly, he presented no evidence that he had any legal duty to share in any losses.

In sum, Jurado's failure to prove the existence of every element required for a finding of a joint venture between himself and A&A Electric through competent, substantial evidence is fatal to his claim. Hence, the trial court's final judgment in his favor cannot stand, and we reverse the final judgment and remand for entry of a final judgment in favor of A&A Electric.

Reversed and remanded.

KHOUZAM and SALARIO, JJ., Concur.