FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARK MORAN; PATRICIA BAILEY WHITE, individually and on behalf of a class of similarly situated persons, | No. 15-15512 |
| Plaintiffs-Appellants, | D.C. No. 2:13-cv-00487-JAM-CKD |
| v. | |
| HUGH BROMMA; JAY PEARSON, AKA Jerry Pearson, AKA Jerry O. Pearson, Jr.; ENTRUST GROUP, INC.; ENTRUST ADMINISTRATION, INC.; ENTRUST MID-SOUTH, LLC, AKA Mid South Retirement Services, LLC, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted December 14, 2016
San Francisco, California

Before: KOZINSKI, BYBEE, and N.R. SMITH, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs Mark Moran and Patricia Bailey White appeal the district court's dismissal of their claims for fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against The Entrust Group, Inc., Entrust Administration, Inc., and Hugh Bromma ("Defendants").[1] White also appeals the district court's dismissal of her claim against Defendants for financial elder abuse under California Welfare & Institutions Code § 15610.30. We review de novo the grant of a motion to dismiss, *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009), and can affirm on any ground supported by the record, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005). We affirm the dismissal of all claims but reverse the district court's denial of leave to amend with respect to White's RICO claim against Bromma and her elder abuse claim.

1. California imposes a three-year statute of limitations on fraud claims. Cal. Civ. Proc. Code § 338(d). "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing . . . ." *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (Cal. 1988). Plaintiffs contend that they are subject to a "relaxed" discovery rule because Defendants owed them fiduciary duties. The only difference between the

---

[1] The district court entered a default judgment against Defendants Entrust Mid-South, LLC and Jay Pearson, and they are not parties to this appeal.

ordinary discovery rule and the "relaxed" discovery rule "is that in the latter situation the duty to investigate may arise later by reason of the fact that the plaintiff is entitled to rely upon the assumption that his fiduciary is acting in his behalf." *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 131 (1975). "But, once the plaintiff becomes aware of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with the knowledge of facts which would have been discovered by such an investigation." *Id.* (citation omitted).

Plaintiffs filed this action on March 11, 2013. Their fraud claims are therefore barred if they suspected or should have suspected wrongdoing before March 11, 2010. As of July 2008, Moran knew that his promissory note had matured without repayment and that he "received substantially less than the 12% in accrued interest he was supposed to receive." He made repeated phone calls to Jay Pearson "to find out what was going on with his investment," but Pearson never returned Moran's calls. Given the failure to comply with the promissory note's terms and Pearson's refusal to return Moran's repeated phone calls, a reasonable person would have suspected wrongdoing. *See Kline v. Turner*, 87 Cal. App. 4th 1369, 1375 (2001) (holding that a reasonable person would have suspected wrongdoing when the defendant inexplicably failed to pay under a contract). The

district court therefore correctly concluded that Moran's fraud claim was time barred.

The same is true as to White. White stopped receiving interest payments in the third quarter of 2008. She contacted Pearson shortly thereafter and learned that all of his investments had gone bad, at which point she knew that her Self-Directed Individual Retirement Account was worthless. White recognized that her account statements showed a fair market value of $120,000 despite the fact that her account was worthless. When White complained about the discrepancy, she was simply told she could take her business elsewhere. White argues that she was entitled to rely on the July 2009 representation from Pearson's attorney that Pearson would pay her back starting in July 2010, but White never received the promised settlement documents to finalize this agreement or the promised quarterly reports. Regardless of whether Defendants owed White fiduciary duties, the district court

properly concluded that White should have suspected wrongdoing before March 2010. Her fraud claim is therefore barred.[2]

2.     The statute of limitations for a civil RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). For the reasons discussed above, the district court properly concluded that Moran discovered his injury in 2008, more than four years before he brought his RICO claim. *See Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) ("[T]he civil RICO limitations period 'begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" (citation omitted)).

As to White, the district court dismissed her RICO claim for failure to allege the existence of a distinct RICO person and enterprise. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (alteration in original) (quoting *Cedric Kushner*

---

[2] At oral argument, Plaintiffs' counsel raised the theory of a continuous tort, suggesting that, even if Plaintiffs' claims are time barred, they should still be able to recover for fees and other injuries that occurred within the past three years. Plaintiffs did not raise this or other equitable exceptions to the three-year limitations period in their opening brief. *See Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013). Therefore, such arguments are waived. *See Brown v. Rawson–Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016).

5

*Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)).  White names The Entrust Group, Entrust Administration, Entrust Mid-South ("Mid-South"), Bromma, and Pearson as RICO persons and alleges that they collectively formed an associated-in-fact RICO enterprise.  A plaintiff may name all members of an associated-in-fact enterprise as individual RICO persons, *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461–62 (9th Cir. 1992), but must establish that those individual members are "separate and distinct" from the enterprise they collectively form, *Living Designs*, 431 F.3d at 361.

As to Defendant Bromma, a corporate officer is sufficiently distinct from the corporation for which he works such that a plaintiff can allege the officer as the RICO person and the corporation as the RICO enterprise.  *See Cedric Kushner Promotions*, 533 U.S. at 163; *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992).  Bromma, as CEO of The Entrust Group and Entrust Administration, is distinct from those corporations, Mid-South, and Pearson.  It was thus error to dismiss White's RICO claim against Bromma on this ground.

Although White alleged sufficient distinctiveness as to Bromma, the Second Amended Complaint ("SAC") fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud."  *Lancaster*

*Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

White's general allegations that Bromma "made false representations in 2012" and that Bromma knew about Pearson's illegal acts do not meet this standard. *See id.*; *see also Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("Conclusory allegations that [two defendants] 'knew that [their co-defendants] were making . . . false statements to clients . . . and thus were acting in concert with [those co-defendants]' . . . without any stated factual basis are insufficient as a matter of law."). Even assuming Bromma's September 2010 phone call with White would qualify as a predicate act, "at least two predicate acts are required in order to establish a 'pattern' for RICO purposes." *Lancaster Cmty. Hosp.*, 940 F.2d at 405. White failed to sufficiently allege a pattern of racketeering with respect to Bromma, and her claim thus fails. We therefore affirm the district court's dismissal of White's RICO claim against Bromma. We do reverse the denial of leave to amend, however, because it is possible that White could plead additional facts that would cure this deficiency. *See Swartz*, 476 F.3d at 765.

As to The Entrust Group and Entrust Administration, whether a plaintiff can name a corporation as the RICO person and the corporation plus its employees and affiliates as an associated-in-fact enterprise is a more nuanced question. *See Living Designs*, 431 F.3d at 361–62; *see also Cedric Kushner Promotions*, 533 U.S. at

7

164. The relevant inquiry is whether "[t]he associated in fact enterprise . . . is 'a being different from, not the same as or part of, the person whose behavior [RICO] was designed to prohibit'" and whether "the enterprise can[] be either formally or practically separable from the person." *Living Designs*, 431 F.3d at 362 (second alteration in original) (quoting *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984)). White makes no cognizable arguments explaining how The Entrust Group and Entrust Administration are separate and distinct from the alleged enterprise, consisting only of members of the same corporate family. "We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (citation omitted). We thus affirm the dismissal of White's RICO claim, with prejudice, as to The Entrust Group and Entrust Administration.

3.     The district court dismissed White's elder abuse claim for failure to comply with Rule 9(b)'s heightened pleading requirement. Specifically, the district court faulted White for treating Defendants as a group. *See Swartz*, 476 F.3d at 764 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together . . . ."). But the SAC contains allegations specific to The Entrust Group, Entrust Administration, and Mid-South, as well as separate allegations specific to

Bromma. White alleged that The Entrust Group and its franchisees and licensees "referred to themselves collectively as 'ENTRUST,'" and that The Entrust Group, Entrust Administration, and Mid-South acted together in sending out false account statements showing extraordinary investment returns or consistent valuation while knowing the accounts were worthless. Accepting these facts as true and making all reasonable inferences in White's favor, White did not run afoul of Rule 9(b) by grouping these defendants together. White did not shy away from making specific allegations as to each defendant; she simply alleged that these defendants collectively sent out fraudulent account statements. It was thus error to dismiss White's elder abuse claim on this ground.

White's elder abuse claim, however, should be dismissed on another ground. California Welfare & Institutions Code § 15610.27 defines an elder as "any person residing in this state, 65 years of age or older." Accordingly, to bring a claim for elder abuse, the plaintiff must have been sixty-five when the alleged financial abuse occurred. *See Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 656 & n.14 (2016). White alleged that she was sixty-six years old when the First Amended Complaint and the SAC were filed in May 2013 and October 2013, respectively. She therefore did not turn sixty-five until late 2011 at the earliest and well after the loss of her 2006 investment.

White suggests that there are other damages that occurred after she turned sixty-five for which she should be able to recover. She alleges that Defendants made unauthorized investments with her account money and kept the funds, though she does not specify when. Given White's allegations that her account was worthless as of 2008, it is unlikely that the Defendants made unauthorized investments with her (nonexistent) money after she turned sixty-five. We therefore affirm the district court's dismissal of White's elder abuse claim, but we reverse the denial of leave to amend. We direct the district court to grant White leave to amend to clarify what injuries, if any, occurred after she turned sixty-five.

**AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.**