Alexandra HLISTA; Anthony
Hlista, Appellants

v.

SAFEGUARD PROPERTIES, LLC;
John Bradley Duvall, a/k/a Brad Du-
vall; Essential Services Inc; Mitchell
Home Services; Jeff Riems.

No. 15–1812.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) March 24, 2016.

Filed: May 5, 2016.

Jonathan R. Burns, Esq., Michael P.
Malakoff, Esq., Malakoff Doyle & Finberg,
Pittsburgh, PA, for Appellants.

Markus E. Apelis, Esq., Gallagher
Sharp, Martin T. Galvin, Esq., Brian C.

Lee, Esq., Reminger, Cleveland, OH, William D. Clifford, Esq., Ashley E. Sharek, Esq., Dickie McCamey & Chilcote, Pittsburgh, PA, for Safeguard Properties, LLC; John Bradley Duvall, a/k/a Brad Duvall; Essential Services Inc; Mitchell Home Services; Jeff Riems.

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, Circuit Judges.

OPINION *

SHWARTZ, Circuit Judge.

Anthony and Alexandra Hlista sued several entities and individuals engaged in the property preservation and security business, claiming that their actions at the Hlistas' home in Bethel Park, Pennsylvania violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state law. The District Court granted Defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), dismissing the Hlistas' FDCPA and RICO claims, and declined to exercise supplemental jurisdiction over their state law claims. We will affirm.

I [1]

In August 2007, the Hlistas purchased their home secured by a mortgage. During the relevant period, Seterus serviced the mortgage. The Hlistas allege that the property was never subject to foreclosure,[2] and there is no allegation in the pleadings that they defaulted on the loan.

From December 2011 to December 2012, the Hlistas temporarily lived in South Carolina. During that time, Mrs. Hlista's parents maintained the property.

While the Hlistas were in South Carolina, Seterus hired Safeguard Properties, LLC "to break into the Hlistas' home." A. 17 (Compl. ¶ 14). In turn, Safeguard hired Essential Services Inc. to perform tasks such as nailing the windows shut, and Mitchell Home Services to install a Seterus-branded lockbox and doorknob on the back door.[3] The Hlistas' home was broken into three times in July 2012 and once in December 2012. The Hlistas discovered the July break-ins in August 2012, when Mrs. Hlista's father noticed a Safeguard sign-in sheet inside the home and observed damage to the windows as well as the installation of the lockbox and doorknob. When the Hlistas returned to Pennsylvania in December 2012, they discovered that someone had used the lockbox on the back door to break in a fourth time.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1. In reviewing an order granting a motion for judgment on the pleadings pursuant to Rule 12(c), we "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir.2008) (internal quotation marks omitted). Thus, the facts are drawn from the Hlistas' Third Amended Complaint.

2. The sole reference to the potential default status of the Hlistas' mortgage payments appears in Safeguard's brief and we do not consider this assertion in reviewing a dismissal of a complaint pursuant to Rule 12(c), consistent with the rule that at the Fed. R.Civ.P. 12(c) stage, a court generally considers only the complaint, any attached exhibits, documents relied upon in the complaint, matters of public record, and any "indisputably authentic documents." *Spruill v. Gillis*, 372 F.3d 218, 223 & n. 2 (3d Cir.2004); *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F.Supp.2d 591, 595 (E.D.Pa.2010).

3. Essential allegedly hired John Duvall and Jeff Riems to break into the home.

The Hlistas sued Safeguard, Essential, Mitchell, Duvall, and Riems. After the Hlistas were permitted to amend their complaint multiple times, Defendants moved for judgment on the pleadings pursuant to Rule 12(c). The District Court granted the motions, concluding that Defendants are not "debt collectors" and hence not liable under the FDCPA, and that Plaintiffs failed to plausibly plead RICO claim. The District Court also declined to exercise supplemental jurisdiction over the remaining state law claims. The Hlistas appeal.

## II [4]

### A. FDCPA Claim

We will first review the order granting judgment on the pleadings in favor of Defendants on the FDCPA claim.[5]

The FDCPA addresses abusive, deceptive, and unfair debt collection practices by debt collectors, 15 U.S.C. § 1692, and "provides a remedy for consumers" aggrieved by such practices. *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir.2005) (citing *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000)). "A threshold requirement of the FDCPA is that the prohibited practices are used in an attempt to collect a debt." *Pollice*, 225 F.3d at 400 (internal quotation marks omitted); *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 265 (3d Cir. 2013) (explaining that the FDCPA covers conduct "taken in connection with the collection of any debt" (internal quotation marks and citations omitted)). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The Hlistas do not allege the existence of a debt or that Defendants broke into their home in an attempt to collect a debt that the Hlistas were allegedly obligated to pay.[6] At most, they state that there was a mortgage on their property,

---

**4.** The District Court had jurisdiction over the FDCPA and RICO claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion for judgment on the pleadings pursuant to Rule 12(c). *Rosenau*, 539 F.3d at 221. Granting judgment on the pleadings is appropriate where the plaintiff has not alleged "sufficient factual matter, accepted as true [and viewed in the light most favorable to the plaintiff], 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Rosenau*, 539 F.3d at 221; *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir.2004) (equating standards of review for Rules 12(b)(6) and 12(c)). We may affirm on any ground supported by the record. *Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir.2000) (en banc).

**5.** The Hlistas assert that Defendants violated 15 U.S.C. § 1692f(6), which provides:

... the following conduct is a violation of this section: ... (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if— (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

**6.** The Hlistas argue that Defendants lacked authority to enter the home under the terms of the mortgage. This argument has no bearing on whether the Hlistas have alleged that there was a debt and hence whether debt collection activity occurred.

but they do not assert that they were in or were perceived to be in default, and they specifically allege that the property was never subject to a foreclosure action.[7] Because the prohibited conduct under § 1692f "presupposes that the actions are used in an attempt to collect a debt," failure to allege the existence of such a debt or draw any connection between Defendants' alleged conduct and an attempt to collect a debt places the conduct outside of the FDCPA. *Gordon v. Bank of New York Mellon Corp.*, 964 F.Supp.2d 937, 948–49 (N.D.Ind.2013) (concluding that Safeguard's break-in activity, including damaging the home and removing belongings, "is not inherently associated with the collection of a debt," and the lack of "allegation[s] that these acts were done in an attempt to collect a debt" meant the pleadings were "not sufficient to bring plaintiffs under the protection of the FDCPA"). As a result, the FDCPA does not apply. To hold that it does apply would "extend the protections of the FDCPA well beyond its intended purpose to protect consumers from debt collection abuses, because it would make the FDCPA applicable to situations … where there is no hint of any attempt to collect a debt or any attempt to collect an alleged debt." *Id.* at 950 (citations omitted).

Accordingly, the District Court properly granted Defendants' Rule 12(c) motions on the FDCPA claim.[8]

## B. RICO Claims

We next turn to the Hlistas' challenge to the District Court's order granting judgment on the pleadings on their RICO claims.

The Hlistas sued Essential, Duvall, and Riems for violating RICO and Safeguard for conspiring to violate RICO under 18 U.S.C. §§ 1962(c) and 1962(d), respectively.[9]

Section 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1692(d). Because a conspiracy claim will fail "if the pleadings do not state a substantive RICO claim upon which relief may be granted," we will first examine the Hlistas' substantive claim under § 1962(c). *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir.2000) (citation omitted); *see Lightning*

---

**7.** The Hlistas attached to their Third Amended Complaint a Safeguard sign-in sheet left in their home that states it was posted "as a request of the mortgagee," A. 32, the mortgage contract, A. 37, and a police report filed by the Hlistas that references a "problem with the mortgage company," A. 35. We decline to draw an inference from these documents that the Hlistas failed to pay their mortgage, particularly where they could have satisfied the "debt" element of the cause of action by alleging that they were in default or were incorrectly viewed as being in default.

**8.** The Hlistas' Third Amended Complaint also referenced violations of 15 U.S.C. §§ 1692e(2)(A) and 1692f(1). The Hlistas make no argument regarding either provision and accordingly they have waived any claim based on them. *See Khan v. Att'y Gen.*, 691 F.3d 488, 496 n. 5 (3d Cir.2012) (explaining that a party waives an issue on appeal when it omits the argument from its opening brief).

**9.** The Hlistas did not sue Mitchell under RICO.

*Lube v. Witco Corp.,* 4 F.3d 1153, 1191 (3d Cir.1993) ("Any claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.").

A plaintiff bringing a substantive RICO claim under § 1962(c) must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 362 (3d Cir.2010) (internal quotation marks omitted). A pattern of racketeering activity "requires at least two acts of racketeering activity within a ten-year period." *Id.* (quoting 18 U.S.C. § 1961(5)); *see Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990) ("[N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern."). These are known as "predicate acts" and "may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." [10] *Lum v. Bank of Am.,* 361 F.3d 217, 223 (3d Cir.2004), *abrogated in part on other grounds by Twombly,* 550 U.S. at 557, 127 S.Ct. 1955; 18 U.S.C. § 1961(1) (defining "racketeering activity").

■ Where, as here, the predicate acts alleged are mail and wire fraud, plaintiffs are subject to the heightened pleading standard for fraud set forth in Fed. R.Civ.P. 9(b), which states that "a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b); *e.g., Lum,* 361 F.3d at 223. "[T]o place the defendant on notice of the 'precise misconduct with which [it is]

charged,'" *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir.2007) (alteration in original) (quoting *Lum,* 361 F.3d at 223–24), a plaintiff "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation," *id.* at 200 (citing *Lum,* 361 F.3d at 224), and "must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum,* 361 F.3d at 224.

The Hlistas' Third Amended Complaint contains the following allegations of mail and wire fraud: .

> Defendants, Essential Services; Jeff Riems; and[ ] John Bradley Duvall violated RICO by committing mail and/or wire fraud to further a scheme designed to break into the Hlistas' and others' homes.
>
> Defendants had the specific intent to engage in the substantive RICO conduct, mail fraud, to further the break-in scheme.
>
> Defendants committed a number of break-ins and communicated with the Safeguard–Essential Enterprise by mail and/or wire (i.e., electronically) as well as through the U.S. mails in furtherance of the scheme. Defendants could not have carried out the break-in scheme absent use of the U.S. mails or interstate wires which constitute predicate acts of racketeering activity....
>
> Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ [ ] 1341 and 1343 in that [they] devised (or intended to devise) a scheme to defraud the Hlistas of their home. For

---

10. The elements of mail or wire fraud are: "(1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent." *United States v. Pharis,* 298 F.3d 228, 234 (3d Cir.2002). Although "[a] scheme or artifice to defraud need not be

fraudulent on its face, [it] must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum,* 361 F.3d at 223 (internal quotation marks omitted).

the purpose of executing the break-in scheme, Defendants caused delivery of various documents by the U.S. mails or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings. A. 20–22 (Compl.¶¶ 31, 34, 35, 40). These allegations fail to set forth any information that supports an inference that any Defendant attempted to mislead or deceive the Hlistas or any other person. Thus, they provide no notice as to the precise misrepresentations or omissions that were "calculated to deceive" another or how they were connected to a fraudulent scheme. *Cf. Lum*, 361 F.3d at 223, 224–25 (affirming dismissal of § 1962(c) claim because conclusory allegations about use of the mails or wires to send "bank statements, advertisements for credit cards," and other "promotional materials containing . . . fraudulent stated and artificially inflated interest rates" failed to identify specific misrepresentations or who sent them to which plaintiffs). Because the Hlistas fail to allege facts from which a scheme to defraud may be inferred, they fail to state a claim under § 1962(c), and the District Court properly granted judgment on the pleadings in favor of Essential, Duvall, and Riems on the substantive RICO claim.[11]

For the same reasons, the Hlistas' RICO conspiracy claim against Safeguard was appropriately dismissed. As stated previously, when the pleadings do not state a substantive RICO claim, the RICO conspiracy claim must fail. *Efron*, 223 F.3d at 21; *see Lightning Lube*, 4 F.3d at 1191. Because the Third Amended Complaint fails to state a substantive RICO claim under § 1962(c), the District Court properly granted judgment on the pleadings in favor of Safeguard on the RICO conspiracy claim.[12]

### III

For these reasons, we will affirm.[13]

---

11. Similar pleading deficiencies exist with respect to the other aspects of the Hlistas' § 1962(c) claim. For example, the Hlistas merely repeat the elements of a RICO enterprise without providing supporting facts about the entity allegedly created by agreement of Safeguard and Essential. This "formulaic recitation" fails to meet the standards set forth in *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, and *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Further, the Hlistas do not allege any facts "showing that the defendants conducted or participated in the conduct of the enterprises' affairs, not just their own affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001) (emphasis and internal quotation marks omitted). For instance, the Hlistas appear to allege that the entities' property preservation activities, characterized as break-ins, are unlawful, but do not allege what the entities' normal business activities are apart from property preservation.

12. The Hlistas do not and hence have waived any challenge to the District Court's decision to decline to exercise supplemental jurisdiction over their state law claims. *Khan*, 691 F.3d at 496 n. 5. In any event, because the District Court properly dismissed the Hlistas' federal claims, it acted well within its discretion in declining to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir.2000).

13. To the extent that the omissions we identify could be easily cured, we note that plaintiffs were given multiple opportunities to amend their pleadings. Given this specific procedural context, and in the interest of judicial economy, we decline to give plaintiffs yet another opportunity to amend.